

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed June 4, 2019**

_____
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| BFN OPERATIONS LLC, | § § | CASE NO. 16-32435-BJH (Chapter 7) |
| DEBTOR. | § § § | |
| | § § | |
| DIANE G. REED, TRUSTEE, | § § | ADV. PROC. NO. 18-3186-BJH |
| PLAINTIFF, | § § | Related to ECF Nos. 19 & 21 |
| v. | § § § | |
| PLT CONSTRUCTION COMPANY, INC., | § § | |
| DEFENDANT. | § § | |

**MEMORANDUM OPINION (I) GRANTING DEFENDANT SUMMARY JUDGMENT ON COUNT 1 OF THE COMPLAINT, (II) DENYING THE TRUSTEE SUMMARY JUDGMENT ON COUNT 1 OF THE COMPLAINT, AND (III) DENYING AS MOOT THE PARTIES' RESPECTIVE REQUESTS FOR SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE <u>DEFENSES RAISED UNDER 11 U.S.C. § 547(c)</u>**

**I.     INTRODUCTION**

In this adversary proceeding, the Plaintiff Diane Reed (the "**Trustee**"), Chapter 7 trustee of the bankruptcy estate of BFN Operations LLC (the "**Debtor**" or "**BFN**"), seeks to avoid and recover three prepetition payments made by the Debtor to PLT Construction Company, Inc. ("**Defendant**") shortly before filing bankruptcy—totaling $290,532.21—as either preferential or fraudulent transfers.[1]  Now before the Court are cross motions for partial summary judgment on only Count 1 of the Trustee Complaint (*i.e.,* the preference count).  For the reasons explained below, the Court finds there are no material issues of fact and Defendant is entitled to summary judgment as a matter of law on Count 1 of the Trustee's Complaint.  Because this ruling fully disposes of Count 1, the parties' respective requests for summary judgment regarding Defendant's affirmative defenses raised under 11 U.S.C. § 547(c) are denied as moot.

**II.    JURISDICTION, VENUE, AND STATUTORY AND CONSTITUTIONAL AUTHORITY**

Subject matter jurisdiction exists in this adversary proceeding pursuant to 28 U.S.C. § 1334(b), and this Court has authority to exercise bankruptcy subject matter jurisdiction pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33) for the Northern District of Texas dated August 3, 1984.  The motions present "core" matters under 28 U.S.C. §§ 157(b)(2)(F), and this Court has statutory and Constitutional authority to enter final orders and judgments in this proceeding.

**III.   SUMMARY JUDGMENT STANDARD**

In deciding a motion for summary judgment, a court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1] ECF No. 1 (the "**Complaint**").

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.² In deciding whether a fact issue has been raised, the facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party.³ A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial.⁴ While courts must consider the evidence with all reasonable inferences in the light most favorable to the non-movant, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"⁵ "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"⁶

"After the movant has presented a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."⁷ However, where "the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case."⁸ On cross-motions for summary judgment, the court must review each party's motion independently, and view the evidence and inferences in the light most favorable to the non-moving party.⁹

---

² FED. R. CIV. P. 56, as made applicable by FED. R. BANKR. P. 7056.
³ *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).
⁴ *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001) ("the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence") (citing *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 135 (2000)); *see also U.S. v. An Article of Food Consisting of 345/50 Pound Bags*, 622 F.2d 768, 773 (5th Cir. 1980) (the court "should not proceed to assess the probative value of any of the evidence....").
⁵ *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing FED. R. CIV. P. 56(e)).
⁶ *Pylant v. Hartford Life and Acc. Ins. Co.,* 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).
⁷ *Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (internal citation omitted).
⁸ *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
⁹ *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994).

## IV.  FACTUAL AND PROCEDURAL HISTORY

The relevant facts are undisputed.  On or about October 22, 2015, BFN[10] contracted with Defendant for Defendant to construct a nursery pad storage addition and loading dock on property BFN leased in North Carolina (the "**Lease**").[11]  BFN agreed to pay Defendant a lump sum of $476,569, plus up to an additional $5,000 for optional testing.[12]  As Defendant's work progressed, it submitted seven invoices to BFN for payment, which totaled $478,760.05.[13]  On March 25, 2016, while it was still owed $290,532.21, Defendant executed a document titled "Final Payment Lien Waiver,"[14] the interpretation of which is the primary issue between the parties.  Defendant was then paid in full on May 25, 2016.[15]

On June 17, 2016, the Debtor and various affiliated entities each filed for protection under Chapter 11 of the Bankruptcy Code.  Their cases were jointly administered under the lead case of *In re BFN Operations LLC* until the cases were converted to Chapter 7 on January 20, 2017 and Diane Reed was appointed Chapter 7 Trustee.

On June 13, 2018, the Trustee filed her Complaint, which contains four counts:

- Count 1:  Avoidance of Preference Period Transfers – 11 U.S.C. § 547, seeking to avoid $290,532.21 in payments from BFN to Defendant, comprised of payments on Invoices 3, 6, and 7;

---

[10] Although the contract at issue is between Defendant and Berry Family of Nurseries, both parties take the position that it is between Defendant and BFN, so the Court will do the same.  *Compare* Defendant's Appx. [ECF No. 20-1] at 5-7 (the "**Contract**") *with* Defendant's Brief [ECF No. 20] at 2 ("On or about October 22, 2015, BFN contracted with PLT….") *and* Trustee's Motion for Summary Judgment [ECF No. 21] ¶ 11 (describing the Contract as "between BFN and PLT").

[11] Defendant's Appx. [ECF No. 20-1] at 5-7 (Contract), 26-32 (Memorandum of Lease between the Debtor and Store SPE Berry 2014-4, LLC).

[12] *Id.* at 6.  Optional testing costs were $2,191.50, resulting in a total project cost of $478,760.05.  Defendant's Appx. [ECF No. 20-1] at 11 (section titled "Change Order Summary).

[13] Trustee's Appx. [ECF No. 23] at 7-8 (Invoice 1 for $29,799.63), 10-11 (Invoice 2 for $59,370.57), 13-14 (Invoice 3 for $52,874.57), 16-17 (Invoice 4 for $42,998.59), 18-19 (Invoice 5 for $49,479.62), 20-21 (Invoice 6 for $196,361.47); Defendant's Appx. [20-1] at 9-10 (Invoice 7 for $47,876.05).

[14] Trustee's Appx. [ECF No. 23] at 23.

[15] Complaint [ECF No. 1] at Exhibit A; Defendant's Brief [ECF No. 20] at 3.

- Count 2: Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B), seeking to avoid $290,532.21 in payments from BFN to Defendant, comprised of payments on Invoices 3, 6, and 7, to the extent such payments are not found to be preferential payments under Count 1;

- Count 3: Recovery of Avoided Transfers – 11 U.S.C. § 550; and

- Count 4: Disallowance of All Claims – 11 U.S.C. § 502(d) and (j), seeking to disallow all claims held by Defendant against the estate until such time that Defendant returns the avoided transfers.

Defendant filed its Answer to the Complaint [ECF No. 7] on September 14, 2018, denying that the Trustee is entitled to recover the payments and alleging five affirmative defenses. The parties then filed cross motions for summary judgment on March 4, 2019. Defendant requests summary judgment on Count 1 of the Complaint and its affirmative defense under 11 U.S.C. § 547(c)(1), while the Trustee requests summary judgment as to Count 1 of the Complaint and Defendant's affirmative defenses under 11 U.S.C. § 547(c)(1), (c)(2), and (c)(4).

On May 15, 2019, the Court held and concluded a hearing on the motions, after which it took the matter under advisement. This Memorandum Opinion contains the Court's reasons for granting summary judgment for Defendant on Count 1 and denying summary judgment for the Trustee on Count 1, issued in accordance with Rule 56 of the Federal Rules of Civil Procedure, as made applicable by Rules 9014 and 7056 of the Federal Rules of Bankruptcy Procedure. In summary, there is no preference liability as a matter of law.

## V. LEGAL ANALYSIS

The elements of an avoidable preference under 11 U.S.C. § 547(b) are that a payment of the debtor's property: (1) was for the benefit a creditor, (2) was on account of antecedent debt, (3) was made while the debtor was insolvent, (4) was made within 90 days before the bankruptcy case was filed, and (5) enabled the creditor to receive a larger share of the estate than if the transfer had

not been made.[16]  Of these five elements, only the last, § 547(b)(5), is disputed.[17]  The ultimate burden to prove that element lies with the Trustee.[18]

Analysis of § 547(b)(5) requires a bankruptcy court to construct a hypothetical Chapter 7 liquidation to determine what the creditor would have received had the transfers not taken place,[19] assuming that each party would have acted in a commercially reasonable manner.[20]  This test is often referred to as the "greater percentage test" or the "improvement in position' test."[21]  If the creditor received more than it would have in this hypothetical liquidation, a preference has occurred.

### A.    Defendant's Inchoate Lien Rights

According to Defendant, the Trustee is unable to meet her burden because, under North Carolina law,[22] it held an inchoate statutory lien right in the Debtor's interest in the Lease.[23]  Because of this, Defendant argues it would be paid in full in a hypothetical liquidation and no preference occurred.

---

[16] 11 U.S.C. § 547(b).

[17] The fifth element is that the transfer must enable the creditor "to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title."  11 U.S.C. § 547(b)(5).

[18] 11 U.S.C. § 547(g) ("the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section").

[19] *Lowe v. Palmetco Inc. (In re N.A. Flash Found. Inc.)*, 298 Fed. Appx. 355, 359 (5th Cir. 2008) (unpublished) (citing *Cunningham v. T & R Demolition, Inc. (In re ML & Assocs., Inc.)*, 301 B.R. 195, 202 (Bankr. N.D. Tex. 2003)).

[20] *Id.*

[21] *Unsecured Creditors Comm. v. Cmty. Bank (In re Stinson Petroleum Co.)*, 506 Fed. Appx. 305, 309 (5th Cir. 2013) (unpublished) (citing *Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery )*, 171 F.3d 249, 253 (5th Cir. 1999); *Smith v. Assoc. Comm. Corp. (In re Clark Pipe & Supply Co.)*, 893 F.2d 693, 698 (5th Cir. 1990)).

[22] Both parties agree that, although 11 U.S.C. § 547 governs the avoidability of the transfers, the parties' respective rights in the underlying property are governed by North Carolina law.  Defendant's Brief [ECF No. 20] at 5-6; Trustee's Brief [ECF No. 22] at 9.

[23] For purposes of this Memorandum Opinion, an "inchoate lien" is a statutory lien that could have been timely perfected under applicable state law had the creditor not been paid in full.

Defendant's argument begins with § 44A-8 of the North Carolina General Statutes, which states:[24]

> Any person who performs or furnishes labor or professional design or surveying services or furnishes materials or furnishes rental equipment pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on real property on the real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished or equipment rented pursuant to the contract.

The "claim of lien" relates to and takes effect from the time that Defendant first furnished labor or materials.[25] Thus, according to Defendant, had it not been paid in full prepetition, it would have acted in a commercially reasonable manner by perfecting its inchoate lien right, making it a secured creditor entitled to payment in full in a hypothetical liquidation. Defendant supports this argument with the Declaration of Kelly Proctor, Defendant's Vice President, explaining that:[26]

> PLT [Defendant] has a company policy and practice of addressing overdue debts by routinely asserting its lien rights in instances of nonpayment on its projects. Once such example occurred in December 2016 on a project known as "UHC-Lillington." PLT asserted its lien rights on the UHC-Lillington Project upon the failure of its customer to timely pay for the work performed by PLT. A true and accurate copy of PLT's notice of claim of lien upon funds for the UHC-Lillington project is attached as Exhibit E.

The Trustee does not dispute that North Carolina law granted Defendant an inchoate lien right in the Debtor's leasehold interest, but argues that Defendant released that right as of March 25, 2016 when it executed the Final Payment Lien Waiver. And, since the payments at issue were received by Defendant on and after that date, Defendant held only a general unsecured claim and would not be entitled to payment in full in a hypothetical liquidation. Defendant, however, argues that its lien waiver did not become effective until *after* it was paid in full.

---

[24] N.C. GEN. STAT. § 44A-8 (titled "Mechanics', laborers', and materialmen's lien; persons entitled to claim of lien on real property").
[25] *Id.* § 44A-10.
[26] Defendant's Appx. [20-1] at 3-4 (§§ 2, 15) and 16-25 (Exhibit E, UHC-Lillington documents).

**MEMORANDUM OPINION** 7

Neither party argues that the Final Payment Lien Waiver is ambiguous. Thus, the issue is a matter of contractual interpretation. Under North Carolina law, lien waivers are interpreted according to the same principles applied to contracts in general. As explained by the court in *Wachovia Bank Nat. Ass's v. Super Const. Corp.*:[27]

> "Whenever a court is called upon to interpret a contract[,] its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Gilmore v. Garner,* 157 N.C. App. 664, 666, 580 S.E.2d 15, 18 (2003) (quoting *Lane v. Scarborough*, 284 N.C. 407, 409–10, 200 S.E.2d 622, 624 (1973)). "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.*, 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). "[I]f the meaning of the [contract] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 300, 524 S.E.2d 558, 563 (2000) (quoting *Woods v. Insurance Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978)).

With this guidance in mind, the Court will turn to the Final Payment Lien Waiver, which states in relevant part:

> In consideration of the <u>final payment</u> amount of **$47,876.05**, the undersigned Contractor hereby knowingly and irrevocably waives and releases any and all liens, bonds, or other claims against the Project describe above, any surety, Owner, General Contractor and/or Berry Family Nurseries for labor, services, equipment and/or materials furnished at any time, prior to or after the date of this Final Lien Waiver, to the Project described above.

Final Payment Lien Waiver at 1 (emphasis in original).[28] The Court finds the plain language of this document to be clear and unambiguous. Defendant's waiver of its inchoate lien rights was expressly conditioned upon its receipt of the final payment amount of $47,876.05. Once that payment was received, Defendant's waiver became effective as of March 25, 2016, the date the

---

[27] 213 N.C. App. 341, 348-49, 718 S.E.2d 160, 165 (N.C. App. 2011).
[28] Trustee's Appx. [ECF No. 23] at 23.

waiver was signed. There is simply no other commercially reasonable interpretation of the Final Payment Lien Waiver. To adopt the Trustee's view would be to conclude that Defendant, for a reason not disclosed in the record, waived its inchoate lien rights while still owed $290,532.21.[29]

Thus, the Court concludes that under North Carolina Law: (1) Defendant held an inchoate lien right in the Debtor's leasehold interest, and (2) Defendant did not waive that inchoate lien right until after it was paid in full. The issue now becomes whether Defendant had to actually perfect its lien right prior to the Debtor's bankruptcy.

There is a division among courts as to whether an unperfected inchoate lien right is sufficient to defeat a preference claim. A small minority of courts conclude that the failure to perfect an inchoate lien results in the defendant's classification as an unsecured creditor, leading to recovery of the payments.[30] The majority of courts addressing this issue, however, focus on the facts that existed at the time of payment. If the creditor could perfect the lien under state law at the time payment is made, and the perfection of the lien is not avoidable under the Bankruptcy Code, then the payments are not recoverable.[31]

The Court finds the majority position persuasive. The inchoate lien defense to § 547(b)(5) recognizes that, since the holder of inchoate lien cannot perfect its lien after being paid in full, a court's refusal to protect such transfers from avoidance exposes the holder to "an unreasonable

---

[29] In addition to the plain language of the Final Payment Lien Waiver, the Court's interpretation is supported by Invoice 7, the last invoice Defendant sent to the Debtor, which is in the amount of $47,876.05 for work performed through March 25, 2016. Defendant's Appx. [20-1] at 9-10.

[30] *See Precision Walls, Inc. v Crampton*, 196 B.R. 299, 302-03 (E.D.N.C. 1996) (compliance with statutory requirements for perfection was required to obtain secured status and contention that creditor could have perfected its lien if it had not been paid was insufficient); *Lewis v. Custom Heating Co. (In re Joseph M. Eaton Builders, Inc.)*, 84 B.R. 56, 58-59 (Bankr. W.D. Pa. 1988) (same).

[31] *Bryant v. JCOR Mech., Inc. (In re Electron Corp.)*, 336 B.R. 809 (10th Cir. BAP 2006); *Liquidating Trust v. Mo-Tech Corp. (In re E.D.C. Liquidating, Inc.)*, 2017 WL 499883 (Bankr. N.D. Ohio Feb. 7, 2017); *Johnson Mem'l Hosp. Inc. v. New England Radiator Works (In re Johnson Mem'l Hospital, Inc.)*, 470 B.R. 119 (Bankr. D. Conn. 2012); *Hopkins v. Merlins Insulation, LLC (In re Larsen)*, 2008 WL 4498890 (Bankr. D. Idaho 2008) (unpublished); *The Official Comm. of Unsecured Creditors of 360Networks (USA), Inc. v. AAF–McQuay, Inc. (In re 360Networks (USA), Inc.)*, 327 B.R. 187, 192-193 (Bankr. S.D.N.Y. 2005).

Hobson's choice between accepting payment (with the attendant risk that it could be avoided if the payor enters bankruptcy) or taking the commercially unreasonable step of declining payment in order to perfect an inchoate statutory lien."[32]

Here, neither party disputes that (1) Defendant was entitled to perfect its inchoate lien under North Carolina law at the time it received the payments at issue, and (2) its perfection of the lien would not be avoidable under the Bankruptcy Code. Thus, the Court concludes that the existence of Defendant's inchoate lien rights prevents the Trustee from establishing the elements of § 547(b)(5), assuming the value of the Debtor's leasehold interest was equal to or greater than the alleged preference payments.

### B. The Trustee Failed to Meet Her Burden to Show that Defendant Received More Than it Would in a Hypothetical Chapter 7 Liquidation

Before the Debtor's case was converted to Chapter 7, it sold substantially all of its assets to LM Farms, LLC effective as of September 2, 2016.[33] LM Farms purchased substantially all of the Debtors' assets for $15,000,000 plus the assumption of certain obligations, including the Lease.[34] Although the Asset Purchase Agreement does not value the leasehold interest, it values the improvements made by Defendant at $431,913.45,[35] which Defendant argues is more than sufficient to cover the maximum alleged preference of $290,532.21.

The Trustee, however, argues that (1) the value assigned to leasehold improvements in a going-concern Chapter 11 sale is not indicative of the value of the Lease itself in a hypothetical

---

[32] *In re 360Networks (USA), Inc.* 327 B.R. at 195.
[33] *See* Asset Purchase Agreement [Case 16-32435, ECF No. 329-1]; Order Approving (I) Sale of Substantially All of the Estates' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests and (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases [Case 16-32435, ECF No. 321]; Notice of Closing of Sale of Substantially All of the Debtors' Assets to LM Farms, LLC [Case 16-32435, ECF No. 352]; Order Converting Cases to Chapter 7 and Granting Other Related Relief [Case 16-32435, ECF No. 559].
[34] Asset Purchase Agreement [Case 16-32435, ECF No. 329-1] §§ 1.1 ("Cash Consideration"), 3.1.
[35] *Id.* § 2.1(m), Schedule 2.1(c) ("New Dock – North Carolina" - $108,934.07 and $322,979.38).

liquidation, and (2) the burden to prove the value of the Lease was equal to or greater than the alleged preference payments lies with Defendant. According to the Trustee, Defendant's failure to prove the value of the Lease entitles her to summary judgment on Count 1 as a matter of law or, at the very least, creates a material fact issue that prevents the Court from awarding summary judgment on Count 1 to either party.

What the Trustee overlooks is that 11 U.S.C. § 547(g) places the burden to prove each element of § 547(b), including hypothetical liquidation value, squarely on the Trustee. Thus, it was her burden to come forward with specific facts showing that there was no genuine issue as to the value of the Debtor's interest in the Lease and that, because of that value, Defendant was paid more than it would have received in a hypothetical Chapter 7 liquidation. The Trustee has failed to do this. Because the Trustee has not presented any probative evidence suggesting she might be entitled to a ruling in her favor on the § 547(b)(5) element, Defendant is entitled to summary judgment as to Count 1 as a matter of law.

## VI. CONCLUSION

Based on the summary judgment record, the Court determines that there are no genuine issues of material fact and Defendant is entitled to summary judgment as a matter of law on Count 1 of the Complaint and the Trustee's request for summary judgment on Count 1 should be denied. Finally, because this ruling fully disposes of Count 1, the parties' respective requests for summary judgment regarding Defendant's affirmative defenses raised under 11 U.S.C. § 547(c) are denied as moot. An order reflecting this ruling shall follow.

Counsel are directed to confer with each other and attempt to submit an agreed form of order consistent with this ruling to the Court within ten days of the entry of this Memorandum Opinion on the Court's docket. If no agreement can be reached, each party shall submit its own

proposed order on or before the tenth day after entry of this Memorandum Opinion on the Court's docket, along with an explanation of why the other side's proposed order judgment is improper.

# # # END OF MEMORANDUM OPINION # # #